# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Reco Taylor, | ) | C/A No. 3:08-3610-JFA-JRM |
| | ) | |
| Petitioner, | ) | |
| v. | ) | |
| | ) | ORDER |
| United States of America and | ) | |
| and M.L.Rivera, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

This matter is before the court for review of the Magistrate Judge's Report and

Recommendation ("Report") made in accordance with 28 U.S.C. § 636(b)(1)(A) and (B) and

Local Rule 19.02(B)(2)(c) (D.S.C.).

> The magistrate judge makes only a recommendation to the Court, to which any
> party may file written objections . . . . The Court is not bound by the
> recommendation of the magistrate judge but, instead, retains responsibility for
> the final determination. The Court is required to make a de novo
> determination of those portions of the report or specified findings or
> recommendation as to which an objection is made. However, the Court is not
> required to review, under a de novo or any other standard, the factual or legal
> conclusions of the magistrate judge as to those portions of the report and
> recommendation to which no objections are addressed. While the level of
> scrutiny entailed by the Court's review of the Report thus depends on whether
> or not objections have been filed, in either case the Court is free, after review,
> to accept, reject, or modify any of the magistrate judge's findings or
> recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992)

(citations omitted).

I.    Introduction

The *pro se* petitioner, Reco Taylor, is an inmate at the Federal Correctional Institution in Estill, South Carolina.  He filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [dkt # 1].  Respondents filed a motion to dismiss and/or for summary judgment on January 21, 2009, to which Taylor filed an opposition on March 23, 2009.  Taylor also filed a "Motion for Clarification" on March 23, 2009.  The Magistrate Judge issued a Report on August 10, 2009 [dkt. #24], recommending that respondents' motion to dismiss and/or for summary judgment be granted and that Taylor's Motion for Clarification be granted.

Respondents filed a document indicating they have no objections to the Report. Taylor timely filed a twenty-one page objection memorandum on August 27, 2009.[1] In his objection, which has been carefully considered by the court, Taylor repeats many of the same arguments raised in his petition and opposition to respondents' motions.

In light of the standard set out above, the court has reviewed, *de novo,* the record, the law, the Magistrate Judge's Report, together with Taylor's objections thereto, and finds there are no genuine issues of material fact to be determined and that the respondents are entitled to judgment as a matter of law.

---

[1] In his objections to the Report, Taylor asserts that Magistrate Judge McCrorey has a conflict of interest in having presided over his bond hearing on October 11, 1994.  Taylor provides no facts to support his allegation that a conflict exists, and therefore, the court deems his accusation to be wholly without merit.

II.     Discussion

A.     Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well-established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Because the petitioner/defendant is acting pro se, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and

therefore, they are construed liberally.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

B.      Procedural History

In order to assess the court's jurisdiction over Taylor's petition, the court has reviewed the dockets for his proceedings in the District of South Carolina.  Much of the arguments in the briefs of Taylor and the respondents in this case revolve around whether Taylor's petition is one properly filed pursuant to 28 U.S.C. § 2241.

Taylor was twice convicted in this District: (1)  United States v. Rico Taylor, Cr. No. 3:94-773-DWS (D.S.C.)("Taylor I"), and (2) United States v. Reco O'Brian Taylor, Cr. No. 3:04-135-JFA (D.S.C.)("Taylor II").

1.      Taylor I

In Taylor I, Taylor pled guilty on January 10, 1996 to one count of conspiracy to distribute controlled substances (21 U.S.C. § 846, Count 1) and to one count of use and carrying and possessing a firearm during the commission of a controlled substance offense (18 U.S.C. § 924(c), Count 7).  The Honorable Dennis W. Shedd, then United States District Judge, sentenced Taylor to 70 months for the drug conspiracy and 60 months for the 924(c) gun charge.  The sentences were to run consecutively for a total of 130 months imprisonment, followed by four years of supervised release.  Upon the government's subsequent Rule 35 motion, Taylor's sentence was reduced to 118 months.  He completed his incarceration in September 2003 and was placed on supervised release.  Taylor did not file a direct appeal or collaterally attack his conviction or sentence in Taylor I.

### 2.    Taylor II

Approximately five months into his supervised release term for Taylor I, Taylor was arrested on February 19, 2004 in Taylor II, and indicted on three federal counts: attempt to possess with intent to distribute crack cocaine, felon in possession of a firearm, and a 924(c) firearm charge.  Pursuant to a plea agreement and in exchange for concessions made by the United States therein, Taylor pled guilty on January 14, 2005 to the § 924(c) charge in Taylor II, stipulated to his prior 924(c) conviction from Taylor I, and waived his right to "contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255."  The court sentenced Taylor to 300 months imprisonment and revoked his supervised release from Taylor I.  Taylor did not file a direct appeal of his conviction or sentence in Taylor II or his revocation of supervised release from Taylor I.

### 3.    Taylor II's § 2255 Action

Despite his waiver in his plea agreement, Taylor collaterally attacked his sentence in Taylor II by filing a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on February 21, 2006.  That case, Taylor v. United States, was docketed as Civil Case No. 06-507-JFA ("§ 2255 Action").  The claims in the § 2255 Action related only to Taylor II.

On March 21, 2006, the government filed a Rule 35 motion in Taylor II to reduce Taylor's sentence.  At a hearing on May 11, 2006, the court reduced the sentence in Taylor

II from 300 months to 216 months, with a supervised release term of five years. That same day, Taylor voluntarily withdrew his § 2255 petition, and the court granted the government's motion to dismiss the § 2255 Action with prejudice.

### 4. Taylor I's Original § 2241 Action

Almost two years later, on February 25, 2008, Taylor filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that he was "actually innocent" of his conviction in Taylor I based upon Bailey v. United States, 516 U.S. 137 (1995). That case, Taylor v. United States, was docketed as Civil Case No. 08-638-JFA ("§ 2241 Action"). Taylor thereafter filed a motion to voluntarily dismiss the § 2241 Action without prejudice, which the court granted on May 14, 2008.

### 5. Taylor I's § 3582 Motion to Correct Sentence

#### a. Taylor Claims Court Mischaracterized § 3582 Motion

In his objections to the Report, Taylor claims that he filed a previous § 2255 motion in Taylor I on October 6, 1997 and that it was denied the following day. In support, Taylor cites to the docket sheet in Taylor I, which contains the following text:

> Order as to Rico Taylor denying [167-1] Motion to Correct Sentence under 18 U.S.C. § 3582 (c)(2) (motion not to be construed as Sec. 2255) as to Rico Taylor (2) (Signed by Judge Dennis W. Shedd) (mflo) (Entered 10/8/1997).

In his objections to the Report, Taylor argues that he tried to "appeal his conviction under Docket 03:94-773 [Taylor I], by way of 28 U.S.C. § 2255 in that he had been over-sentenced in terms of his initial sentencing, but was denied by the district court before the Honorable

Judge Shedd with no enclosed reason as to why petitioner's claim had been denied." Taylor

argues that Judge Shedd improperly construed his October 6, 1997 § 2255 motion as one

under § 3582, and as a result, he has suffered harm in the Magistrate Judge's present

recommendation that he not be allowed to "pass through the narrow window within the

'savings clause' in § 2255(e), in terms of opportunity for an inmate to challenge the validity

of his conviction under § 2241."[2]

In order to assess Taylor's argument, this court retrieved the original case file for

<u>Taylor I</u> from the archives of the Federal Records Center.  Taylor's filing dated October 6,

1997 is captioned "Motion to Correct Sentence Under 18 U.S.C. § 3582(c)(2) (Motion Not

to Be Construed as § 2255)."  In that motion, Taylor requested the court vacate the sentence

imposed on April 24, 1995 as to the weapons charge under § 924(c) in light of the Supreme

Court's December 1995 decision in <u>Bailey</u>.  Taylor now changes his argument, and argues

in his Motion for Clarification:

> Petitioner did in fact file a motion in terms of being over sentenced under doc.
> #94-773.  Motion was denied very strangely, the following day, 10/07/97,
> rubber-stamped with no reasoning as to why petition was dismissed.  **Petition
> was not filed under 18, USC, § 3582(c) but was filed as a motion to correct
> sentence under 28, USC, § 2255, and was construed by the courts as a
> Motion under 18, USC, § 3582(c).**" (Emphasis added)

---

[2] The "savings clause" of § 2255 provides: "An application for a writ of habeas corpus on
behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section,
shall not be entertained if it appears that the applicant has failed to apply for relief, by
motion, to the court which sentenced him, or that such court has denied him relief, unless it
also appears that the remedy by motion is inadequate or ineffective to test the legality of his
detention."

Taylor concedes that he did not challenge the alleged "recharacterization" of his § 3582 motion or Judge Shedd's order denying the motion. Taylor contends that he, "as a layman, was attacking his sentence under 28 U.S.C. § 2255 for relief in terms of being over sentenced, and the courts placed petitioner's petition within a different legal category." He also argues that "any post-judgment Motion in a criminal proceeding that fits the description of § 2255 is a Motion under § 2255."

b. Court Did Not Mischaracterize § 3582 Motion

After review of the record, this court finds that Judge Shedd did not mischaracterize Taylor's § 3582 Motion. Taylor's reference to the docket text "(motion not to be construed as a 2255)" was not derived from an order of the court, but reflected Taylor's own captioning of the filing. Taylor specifically requested the court to treat his motion as one pursuant to § 3582 and not as a § 2255 petition, presumably to avoid having it dismissed as untimely.[3] The court complied with Taylor's request; he cannot now be heard to complain that his earlier strategic decision thwarts his present course of action. Therefore, the court declines to accept Taylor's argument that his § 3582 Motion was in fact a § 2255 motion attacking his "over sentencing."

C. Analysis of § 2241 Claim

Taylor returns to this court with the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed on October 28, 2008, this time requesting that the court vacate his

---

[3] A 1-year period of limitation applies to § 2255 motions.

conviction in <u>Taylor I</u> related to the § 924(c) gun charge to which he pled guilty on January 10, 1996 and served his 118 month custodial sentence. Because Taylor did not file a direct appeal from <u>Taylor I</u>, he is procedurally defaulted from raising it now.

Taylor argues that a § 2255 petition is inadequate or ineffective to bring his claim. The Fourth Circuit has set forth directives whereby a federal prisoner may bring a § 2241 petition when a § 2255 motion is "inadequate or ineffective" to test the legality of his detentions. <u>In re: Jones</u>, 266 F.3d 328, 333-34 (4th Cir. 2000). A petitioner must show that (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the validity of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

The Magistrate Judge has analyzed the "inadequate or ineffective" provision of 2255(e) in light of <u>In re Jones</u> and suggests that Taylor only meets the first and third prongs: (1) at the time of Taylor's conviction, settled law established the legality of his conviction; and (3) the new rule of law that Taylor relies on, <u>Watson v. United States</u>, is not one of constitutional law, rather one of statutory interpretation. However, the Magistrate Judge suggests that Taylor did not meet the second prong because he did not file a direct appeal of his 1995 conviction nor did he file a previous 2255 motion attacking his conviction. The court agrees with the Magistrate Judge's analysis of the "inadequate or ineffective" provision

of 2255(e) in light of In re Jones.

1.    § 2241 Claim is Procedurally Defaulted

The Supreme Court has "strictly limited the circumstances under which a guilty plea

may be attacked on collateral review." Bousley v. United States, 523 U.S. 614, 621 (1998).

To wit:

> It is well settled that a voluntary and intelligent plea of guilty made by an
> accused person, who has been advised by competent counsel, may not be
> collaterally attacked. And even the voluntariness and intelligence of a guilty
> plea can be attacked on collateral review only if first challenged on direct
> review. Habeas review is an extraordinary remedy and will not be allowed to
> do service for an appeal.

Id. (internal citations omitted).

In fact, the Supreme Court has noted "the concern with finality served by the

limitation on collateral attack has special force with respect to convictions based on guilty

pleas," as here. Id. (internal citations omitted). Taylor tries to avoid this conclusion by

arguing that his claim falls within an exception to the procedural default rule, arguing that

his guilty plea was not intelligent because the information the court provided him at his plea

colloquy was erroneous. Because this type of claim can be "fully and completely addressed

on direct review based on the record created at the plea colloquy," id., Taylor can only raise

it in a habeas petition if he can first demonstrate either "cause and actual prejudice" or that

he is "actually innocent." Id.; see also U.S. v. Mikalajunas, 186 F.3d 490 (4th Cir. 1999).

2.    Taylor Cannot Demonstrate "Cause"

Taylor attempts to demonstrate cause by claiming that "neither the accused, nor his

counsel, nor the court correctly understood the essential elements of the crime with which he was charged," thereby rendering his guilty plea constitutionally invalid. Specifically, Taylor claims that while he admitted to certain facts, the facts did not constitute the crime under § 924(c), and cites to Watson v. United States, 552 U.S. 174 (2007), and Bailey for support. For the reasons that follow, Taylor's argument is without merit.

As the Supreme Court has noted, "the argument that it was error for the District Court to misinform petitioner as to the statutory elements of § 924(c)(1) was most surely not a novel one," considering "the Federal Reporters were replete with cases involving challenges to the notion that "use" is synonymous with mere "possession." Bousley at 623. Petitioner also contends that his default should be excused because, "before Bailey, any attempt to attack [his] guilty plea would have been futile." The Supreme Court has also rejected this argument, noting that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time. " Id. Therefore, Taylor is unable to establish cause for his default.

3.    Taylor Cannot Demonstrate "Actual Innocence"

The court may still review Taylor's claim if he can establish that the constitutional error in his plea colloquy "has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). To establish actual innocence, Taylor must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley at 623 (internal citations omitted).

Cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence, not mere legal insufficiency." Id. That is, the government is not limited to the existing record to rebut any showing that Taylor might make, but any admissible evidence of his guilt even if that evidence was not presented during his plea colloquy. Id. at 624. Additionally, "in cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." Id. Taylor was indicted on the following five other counts: Count Two (distribution of 0.06 grams of crack cocaine on February 10, 1994), Count Three (distribution of 0.65 grams of cocaine on February 11, 1994), Count Four (§924(c) violation on February 11, 1994), Count Five (distribution of 6.53 grams of crack cocaine on March 1, 1994), and Count Six (distribution of .54 grams of crack cocaine on March 2, 1994). These counts were dismissed in exchange for Taylor pleading guilty to Counts One and Seven.

When Taylor was sentenced in 1995 for his drug and gun charges, the statute held that any person who "during and in relation to any crime of violence or drug trafficking crime used or carried a firearm," was in violation of 18 U.S.C. § 924 (c). The relevant controlling Fourth Circuit case was United States v. Harris, 39 F.3d 1262 (1994), which held, inter alia, that a jury could reasonably conclude that a § 924(c) violation occurred when firearms "were present for protection and to facilitate the likelihood of the success of the drug distributions." Id. at 1270.

At sentencing, Taylor agreed with the Presentence Report (PSR) which detailed the

12

facts surrounding the conviction. As the Magistrate Judge recited in the Report, the facts in

the PSR reveal the following pertinent information: Task force investigators made at least

four controlled purchases directly from Taylor during the course of their investigation. On

February 10, 1994, two confidential sources purchased 1.06 grams of crack cocaine from

Taylor for $100 at the residence located at 1209 McDuffie Street, and discussed with him

purchasing a quarter ounce of crack for $250. On March 1, 1994, at the same residence, a

confidential source attempted to purchase 14 grams of crack cocaine from Taylor for $500,

but only received 6.53 grams. During the transaction, Taylor discussed exchanging crack for

9 mm semi-automatic pistols. The next day, the confidential source returned to the house to

confront him about having been shorted the previous day. To make up for the shortage,

Taylor gave the confidential source five pieces of crack weighing 0.54 grams, which Taylor

removed from a larger quantity of crack stored in the hole of a living room wall. Taylor

discussed wanting to purchase some automatic weapons, and the CS observed Taylor a

cushion from the couch and produce a .30 caliber Norinco Chinese handgun. Taylor sold the

handgun to the CS for $75. When Taylor removed the handgun from under the couch

cushion, the CS observed 10 to 12 other firearms, including handguns and shotguns, under

the cushion of the couch.

The PSR stated that Taylor admitted to having distributed crack cocaine for Darrell

Samuel for approximately five months between October 1993 and March 1994, often

traveling together while making drug deliveries, with Taylor also acting as a bodyguard

during transactions conducted by Samuels and others. Taylor advised that Samuel provided him and others with a various assortment of firearms, and Taylor admitted that he shot some of these pistols on several occasions while conducting drug transactions. The PSR reflected a three-level adjustment for acceptance of responsibility.

Taylor selectively cites to the guilty plea colloquy in alleging that the Court did not correctly understand the essential elements of 924(c). However, a review of the guilty plea transcript among Judge Shedd, Taylor and his attorney, Jan Strifling, undercuts Taylor's argument:

Court:     Do you understand that you are being charged with conspiracy, that you distributed illegal drugs and you are also being charged with possession of a gun during and in relation to a drug trafficking crime? Do you understand that?

Taylor:    Yes Sir, Your Honor.

Court:     Do you understand the government would have to show that there was an agreement you were involved in to distribute illegal drugs, that you knew the drugs were controlled substances which were illegal; and further do you understand that as to the gun charge the government would have to show that you did possess the gun and the gun was possessed in or during in relation to a drug trafficking offense. Do you understand that?

Taylor:    Yes sir, Your Honor.

(GP Tn. p. 19).

Court:     Let me ask you under Count Seven, did you, as charged under Count Seven, on or about March 2, 1994, in the District of South Carolina, knowingly use and carry firearms during and in relation to a drug trafficking crime which is prosecutable in a court of the United States, and did aid and abet others in the commission of the aforesaid offense, all in violation of Title 18, United States Code, Section 924(c); and section two. Section two is just when you aid and

14

abet someone in a crime you can be charged as if you were the principal in that crime.

As to the 924(c) charge, the government would have to show beyond a reasonable doubt that during and in relation to the commission of that crime you knowingly used or carried a firearm. Did you do that?

Taylor:     Yes, sir, Your Honor.

Court:      As to Counts One and Seven, tell me in your own words what you did, Mr. Taylor?

Taylor:     Count One, I was joining with other individuals to distribute cocaine. In Count 7, Your Honor—

Court:      Crack cocaine and cocaine?

Taylor:     The substance in the conspiracy count.

Court:      Crack cocaine and cocaine?

Taylor:     Yes, it was all in the conspiracy.

Court:      Okay, all right.

Taylor:     Count Seven, Your Honor, I was selling the substance, a gun was sold.

Court:      Tell me what happened under Count Seven?

Taylor:     During the drug sale a gun was sold.

Court:      All right. You were selling drugs and you sold a gun, somebody sold you the gun?

Taylor:     No, the gun was sold to an officer, secret agent, whoever it was, Your Honor.

Court:      Do I understand that you were selling drugs and you sold somebody drugs and a gun.

Taylor:     Yes Sir, Your Honor.

Court:      You think that supports the charge, 924(c)?

Strifling:  Your Honor, there were guns in the house at the time of the transaction. I
            think there were guns. As I recall on the 2nd of March, the undercover agent
            asked if there were guns present. Either Mr. Taylor or someone else lifted up
            a sofa cushion and there were a number of guns.

Court:      So the guns were present, not just sold?

Taylor:     Yes, sir, that's correct.

Court:      So that there were guns present at the scene where you were selling drugs?

Taylor:     Yes sir.

Court:      All right, I think 924(c) would be supported by a gun being given to him in
            exchange for drugs, but I am not sure selling drugs and guns at the time would
            necessarily support 924(c), but under his admission that guns were present
            where drugs were being sold, that supports the charge.

(GP Tn. p. 44–47).

Later in the plea colloquy, FBI Agent Robert Waizenhofer summarized for the Court

the facts of the case on behalf of the government:

FBI Agent:  This is Mr. Rico Taylor. On March 2nd we had to go back because he shorted
            us. At that point we bought a weapon from him. At that time the cooperating
            witness told us he observed weapons that were being used as protection for the
            drug dealers.

Court:      The weapon that you bought, did you buy that after you completed the drug
            transaction?

FBI Agent:  Yes, sir.

Court:      In other words, did he have the gun present with him at the time of the drug
            transaction?

FBI Agent:  Yes, Your Honor.

(GP Tn. p. 52).

After the presentation of the government's evidence against Taylor, the Court gave

Taylor and his counsel an opportunity to challenge the evidence proffered:

Court:      Do you dispute anything the government says it could show about you, Mr.
            Taylor, Mr. Strifling?

Strifling:  No, Your Honor.

Taylor:     No, sir.

(GP Tn. p. 54).

This court agrees with the Magistrate Judge's Report that the evidence reveals Taylor

was surrounded by firearms during the drug transaction on March 2, 1994 and it reasonable

to conclude that the presence of firearms and showing or brandishing them to the confidential

source was for the purpose of protecting and facilitating the success of his drug distributions.

It is also clear that under <u>Harris</u>, Taylor's conduct was in violation of § 924(c).

Taylor argues that his sale of the gun to the agent does not constitute a "use"of a

firearm under § 924(c)(1)(A) when received in trade for drugs.  See <u>Watson</u>.  As the

Magistrate Judge correctly notes, Taylor did not receive a firearm in exchange for drugs.

Rather, he displayed multiple firearms during that transaction.  Therefore, <u>Watson</u> does not

provide support to Taylor's that his 1995 gun conviction should be invalidated.

Next, Taylor argues that the indictment did not charge "possession," just "use" and

"carry."  He suggests Judge Shedd misinformed him of the elements of the offense.  Taylor

misapprehends the law.  Taylor pled guilty on January 10, 1995, and was sentenced on April

24, 1995. During this period, any person who "during and in relation to any crime of violence or drug trafficking crime used or carried a firearm," was guilty of § 924 (c). As the foregoing colloquy demonstrates, Judge Shedd correctly outlined the elements of the § 924(c) charge.

After Taylor was sentenced, the Supreme Court, on December 6, 1995, issued its opinion in <u>Bailey</u>, wherein the Court found that "924(c)(1) requires evidence to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." <u>Id.</u> at 143. The "'use' must connote more than mere possession of a firearm by a person who commits a drug offense." <u>Id.</u> That "use" can include "brandishing, displaying, bartering, striking with, and most obviously firing or attempting to fire a firearm." <u>Id.</u> at 148. Taylor argues that his conduct in selling a firearm for money the day before he was arrested on drug charges did not violate the 924(c) statute pre-<u>Bailey</u>.

As an initial matter, an intervening statutory interpretation such as <u>Bailey</u> does not make one "actually innocent" of the crime, as Taylor appears to argue. More fundamentally, Taylor's § 924(c) conviction does not rest on the contention that he exchanged a firearm for drugs or that he independently sold a firearm. Because Taylor is claiming "actual innocence" of the § 924(c) charge in this § 2241 petition, the court is able to consider any admissible evidence of his guilt. The court finds that Taylor's § 924(c) conviction is supported by the singular admission at his guilty plea hearing that guns were present with him at the time of

the drug transaction. Additionally, the confidential source observed 10 to 12 other firearms under the cushion of the couch where Taylor retrieved the Norinco Chinese handgun to sell to him after selling him drugs. Independently, and perhaps most damningly as a result of Taylor's own admissions, the evidence shows that he used and carried firearms in the course of conducting drug transactions, including actually firing some pistols on several occasions while conducting drug transactions.

In light of this review, the court finds Taylor's claim of actual innocence falls well short of establishing a constitutional error in his plea colloquy that "has probably resulted in the conviction of one who is actually innocent."

Neither is Taylor able to find any solace in the subsequent changes to and interpretations of § 924(c). On November 13, 1998, in response to the Bailey decision, Congress amended § 924(c) to broaden the provision to cover a defendant who "in furtherance of any [crime of violence or drug trafficking] crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The amendment did not delete the "use" prong of the statute, which remains a violation of § 924(c).

The court also rejects Taylor's claim that Watson provides new reliable exculpatory evidence which could not have been presented in 1995. In Watson, the Supreme Court held that an individual who receives a gun in exchange for drugs cannot be said to "use" the gun in relation to a drug trafficking offense. Even if factually comparable to Taylor I, Watson provides no remedy to Taylor, as it has not been made retroactive.

19

D.    Claim of Ineffective Assistance of Counsel

Finally, Taylor claims that he was provided ineffective assistance of counsel on the grounds that his counsel provided him "critically incorrect legal advice."

In order to prevail on an ineffective assistance claim, Taylor must satisfy the two-prong test of Strickland v. Washington, 466 U.S. 668 (1984). He must first demonstrate that counsel's representation fell below an objective standard of reasonableness. Id. at 687–91. In examining the performance of counsel, there is a strong presumption that his conduct was within the wide range of reasonable professional assistance. A reviewing court must be highly deferential in scrutinizing counsel's performance and must filter from its analysis the distorting effects of hindsight. Id. at 688–89.

In addition to showing ineffective representation, Taylor must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

A habeas petitioner alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. That the outcome may have been different but for counsel's error is not dispositive of the "prejudice" inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. Id. A defendant cannot show that a proceeding was fundamentally unfair if the underlying claims the attorney failed to raise are meritless,

because the outcome of the proceeding would not have been different.

The basis of Taylor's ineffective assistance of counsel claim is that his counsel misinformed him as to the elements of 924(c) during his guilty plea in Taylor I. For the reasons exhaustively discussed supra, the court finds that Taylor was correctly apprised of the elements of § 924(c) in the guilty plea colloquy. Taylor has otherwise failed to provide any evidence of ineffective assistance of counsel or resulting prejudice.

III.   Conclusion

For the reasons contained herein, the court adopts the portions of the Report [#24] not inconsistent herewith and overrules Taylor's objections. The court denies Taylor's § 2241 petition, grants his Motions for Clarification [#22, # 28], and grants the government's motion to dismiss/summary judgment [#11, # 13].

IT IS SO ORDERED.

September 30, 2009                              Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge